S. B. Strong, J.
That George Tibbetts, the original lessee, took possession, or commenced the enjoyment of the surplus waters of the Hudson river, at theVest end of the Troy dam, under the lease from the State to him, is apparent, both from the recital in the lease signed by him, that it was granted on his application, and from the payment of the stipulated rent by him, from its date, on the 26th of November, 1835, to the 1st of May, 1843. The defendant admits, in his answer, that the lease was, in and by the will of his father, formally bequeathed to him as residuary legatee, and it was agreed in a stipulation, signed by the Attorney-General and the attorneys for the defendant, that he, as devisee of his father, entered into, and has continued in, the possession and enjoyment of the surplus waters mentioned in the lease, down to the time of the commencement of this action. The lessee, in the latter part of his life, and the defendant has, since his father’s decease, denied the right of the State to lease such surplus waters, on the ground that the father was, and the son since his father’s death has been, the riparian owner on the west side of *525 the Hudson river, where the dam was constructed, and above and below it; and was, as such, entitled to the use of the water, at least to the extent mentioned in the lease. The defendant, for that reason, denies that he uses the water as lessee, but alleges that he enjoys it as owner.
The principle that while a lessee occupies the demised property he cannot successfully contest the title of his landlord, does not depend upon his implied admission of the fact that he holds it as a tenant, and not as owner; but upon the ground that he obtained possession under his landlord, and that, if he could assail the title, he would obtain an advantage which possession gives a contestant: which, as the possession came through the landlord, would, as against him, be most unjust. The defendant in this case could not, therefore, be permitted to litigate the title of the State until he had surrendered the possession of what had been demised to his father.
As the defendant does not allege title in a stranger, but in effect admits that, if he had it not, it was in the State, the only ground on which he could attack the lease is that it was solicited and received by his father through a mistake in supposing that the water belonged to the State, and not to himself. It is undoubtedly true that a party may, in a direct proceeding, avoid a deed or lease to himself of his 'own property which he has taken or accepted through a mistake. But the mistake must, in such case, be one of fact, and not simply of law. In this case such mistake is not alleged, nor, if it had been asserted, could it have availed against strong presumption, without proof. The original lessee must have known that he was bounded by the river; and, if the river was not navigable, he must have known that also. His mistake, if there was any, must have been in reference to his legal rights as such riparian owner; and that was a question of law. If, however, the defendant could have defended himself from the payment of rent on the ground of mistake, he was bound to show by proof that there was such mistake. If in this instance, as I shall presently show, the river was the property of the people, there was no mistake. The defendant was then bound *526 to prove that the river was a private stream; and there was no evidence to that effect.
If the Hudson river was, previous to the construction of the dam, a navigable stream at Troy, and there had been no grant of it by the colonial governors under the King of Great Britain, or the people, then it was the property of the people. A river is considered as an arm. of the sea, and as such navigable, so far as the tide rises and falls. That is a technical rule of early establishment, and of uniform and constant adherence. Some judges and authors have maintained, incidentally, that the rule did not apply where the water ceased to be salt or brackish, or where there was no tidal current up the river. But I have not seen any case where it was so decided, nor any authority where it was separately and distinctly stated. Mr. Angel, in his approved work on tide waters, says (p. 68): “It should also be recollected that although the water is fresh at full tide, yet the river is still an arm of the sea if it flows and reflows. For it was once ingeniously urged, in Rex v. Smith, that the Biver Thames, above London bridge, was not navigable (although it was flowing and reflowing), as the tide beyond that limit was occasioned by the pressure and accumulation backward of the fresh water. But this distinction was, by Lord Mansfield, pronounced new and inadmissible. The Biver Connecticut, for example, is, consequently, for a considerable distance from the Sound, and above where the water is salt, an arm of the sea, and, as such, the bed and shores thereof, as well as the water itself, are, prima facie, public.” It would seem to be reasonable that a river should be deemed an arm of the sea, so far as the circulation is at all subjected to the influence of the oceanic tides. I mean, of course, ordinarily, and not solely when the waters are carried to an unusual height by storms, or by semi-monthly lunar changes. The reason of the rule would seem to extend it as far as I have indicated; and I know of no other which could be adopted where the limit could be as definitely fixed or ascertained. There could be no room for a doubt, but for the occasional use by authors of the term, “ebbing and flowing of the tides.” *527 In all cases the waters clearly ebb; and one of the definitions of the verb ‘ to flow,’ given by lexicographers, is, “ to rise, as the tide.” ( Worcester's Dictionary, title, ‘ To flow.')
There was no evidence in this case to prove that the waters of the Hudson river at Troy are ordinarily subjected to the tidal influence. It seems to have been supposed by the counsel for both parties that juries and judges had sufficient geographical knowledge to determine that question without evidence. I have not. been able to find any authority stating how far up the river the waters were usually swelled by the tides. Dr. Worcester says, in his Gazetteer, that “the tides flow up as far as Troy.” Whether that is the terminus or not is not stated; and if it had been stated that it was, that would not have shown very clearly whether the tides extended to or above the dam. The judge, in nonsuiting the plaintiff, must have assumed, I think, that the Hudson was unnavigable at Troy. As no authority for that is apparent, the nonsuit cannot be sustained. If the case is sent back for" trial, there will probably be some direct and rehable evidence on the subject.
After the construction of the dam, the tides could not, of course, extend above it, and then the waters could not be deemed navigable, as constituting or continuing an arm of the sea. If, however, they were navigable before, the title to lands bounded in general terms by the river extended no further than to ordinary high water-mark. When the character of the waters was changed, that did not extend the defendant’s title, ad medium filum aguce. His original boundary line must continue, unless changed by alluvion. When one grants land bounded by a private river, he may do so in such terms as to retain his title from the margin to the centre of the stream. When, therefore, one owns the bank of such a stream, his title does not necessarily embrace the water, or any part of it. If, then, the State was the proprietor of the bed and waters of the river before the erection of the dam, it continued to be so afterwards.
It is admitted, in the printed points of the counsel for the defendant, that the State, in its sovereign character, owns the *528 bed of navigable streams to high, water-marlc, and that the right of a riparian owner is subservient to the power in the State to abridge or destroy it at pleasure; and the counsel rightly supposed that it was so decided in Gould v. The Hudson River Railroad Company (2 Seld., 522). The riparian owner may undoubtedly use the water passing or adjoining his land for his own advantage, so long as he does not impede the navigation, in the absence of any counter-claim by the State as absolute proprietor. But the State may, as such proprietor of the waters, grant them, or any interest in them, to an individual. If there is any' restriction upon such power, it is that which is imposed by the Constitution of the United States. The defendant cannot well contend that the lease to his father was an impediment to navigation; for that, if true, would be destructive of the right claimed and exercised by him.
It is beyond dispute that the State is the absolute owner of the navigable rivers within its borders, and that, as such owner, it can dispose of them to the exclusion of the riparian owners. In this case, the State exercised its power of disposition in making the lease, and, consequently, such lease is valid.
As the defendant was bound to pay the rent since he acquired the right of the original lessor, that would have enabled the plaintiff to maintain this action to that extent; and it is unnecessary to consider whether he was also obligated in his individual capacity to pay the rent which accrued in the lifetime of his father.
The judgment should be reversed; the nonsuit should be set aside, and there should be a new trial, the costs tb abide the event of the suit.
All the judges concurring,
Judgment reversed, and new trial ordered.